**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **JANE WALTERS,** )<br>)<br>**Plaintiff**, )<br>)<br>v. )<br>)<br>**WALMART INC.** )<br>)<br>**Defendant.** ) | Case No. |

## COMPLAINT

Plaintiff Jane Walters, for her Complaint, states and alleges as follows:

## NATURE OF ACTION

1. Plaintiff brings this employment discrimination action seeking relief for the injuries and damages she sustained as a result of Defendant's age discrimination and retaliation against her with regard to the terms and conditions of her employment.

2. Defendant's discriminatory conduct violated Plaintiff's rights as protected under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, et seq. ("ADEA").

## PARTIES

3. Plaintiff Jane Walters currently resides in Pratt, Kansas.

4. Defendant Walmart Inc. f/k/a Wal-Mart Stores, Inc. ("Defendant") is a foreign corporation licensed to do business in Kansas with its principal place of business located in Bentonville, Arkansas.

1

5. Defendant maintains a place of business within this District and Defendant can be served with process via its Kansas Resident Agent, The Corporation Company, located at 112 SW 7th Street, Suite 3C, Topeka, Kansas 66603.

6. As a corporation, Defendant acts through its officers and employees, and the individuals mentioned herein, whether specifically by name or otherwise, were officers or employees of Defendant acting within the course and scope of their employment.

## JURISDICTION AND VENUE

7. This Court has primary jurisdiction over Plaintiff's ADEA claims under 28 U.S.C. § 1331 because these claims are brought pursuant to federal law.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the unlawful employment practices alleged herein occurred within this District and because Defendant maintains business facilities and operations in this District, where Plaintiff also resides.

9. Defendant is subject to, and a covered employer under, the ADEA.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10. Plaintiff dually filed her timely Charge of Discrimination with the Kansas Human Rights Commission and the Equal Employment Opportunity Commission ("EEOC"), which is attached hereto as Exhibit 1.

11. On or about January 6, 2020, the EEOC issued Plaintiff a "Notice of Right to Sue," which is attached hereto as Exhibit 2.

12. Plaintiff is filing this suit within 90 days of Plaintiff's receipt of the Notice of Right to Sue letter and this suit is timely filed.

13. Plaintiff exhausted all administrative remedies prior to filing this suit.

14. When relevant, Defendant's conduct herein constituted a continuing violation of Plaintiff's federally protected rights stated herein.

## FACTUAL BASIS

15. Plaintiff is sixty-two (62) years of age.

16. Defendant employed Plaintiff in August 1991.

17. At all times relevant to this Complaint, Plaintiff worked at Defendant's Wal-Mart store located at 2003 E. 1st Street, Pratt, Kansas 67124.

18. Plaintiff's most recent position with Defendant was Self-Checkout Host.

19. In her role with Defendant, Plaintiff was responsible for manning seven registers at a time, and her job responsibilities included doing her part to stop theft within the self-checkout area.

20. On several occasions, Plaintiff detected attempted theft and received praise from Defendant for doing so, including the discovery of 50 would-be thieves who had switched tags on merchandise.

21. At all times relevant to this Complaint, Plaintiff was performing at least satisfactory work and she received annual 2% pay raises.

22. In February 2019, according to the rating given by an Assistant Manager on Plaintiff's performance evaluation, she exceeded Defendant's expectations in the area of customer service.

23. During Plaintiff's employment, Defendant engaged in discriminatory conduct toward Plaintiff based on Plaintiff's age, including, but not limited to, the incidents set forth herein.

24. During Plaintiff's employment, she was subjected to disparate treatment because of her age in comparison to Defendant's younger employees; Plaintiff was treated less favorably

than Defendant's younger employees, to include being singled out for unfair, unfounded criticisms of her work performance and having her work more closely scrutinized than younger, similarly situated employees.

25. In November 2018, Defendant employed Tyler Fross, then approximately 29 years of age, as Store Manager.

26. Fross had supervisory authority over Plaintiff, including the ability to make decisions affecting the terms and conditions of her employment with Defendant.

27. Prior to his arrival at Defendant's Pratt store, Fross had not worked as the Store Manager of any other Walmart store.

28. From November 2018 through August 9, 2019, Plaintiff received multiple verbal reprimands for conduct in which Plaintiff's younger counterparts engaged but for which they were not reprimanded.

29. Plaintiff had worked for the previous Store Manager for 5 years, during which time she was not subject to such reprimands.

30. Within a few days of Fross's arrival, he began summoning Plaintiff to his office to discuss trivial matters allegedly pertaining to her job performance.

31. In November 2018, Fross directed an Assistant Manager, Carlie Hoffman, who worked overnight shift and with whom Plaintiff did not work, to verbally reprimand Plaintiff for attempting to prevent store theft.

32. In May 2019, Fross summoned Plaintiff to his office and asked her about her future plans with Defendant, i.e., how long she intended to continue working for Defendant. Plaintiff replied that she planned to work as long as she was healthy. Fross reacted negatively to her response and stated "that's pretty vague."

33. On one occasion in spring 2019, a customer with a large number of items came through the self-checkout line and scanned her items. Plaintiff observed that she failed to scan four of the items. When Plaintiff informed her of this fact, the customer stated that she no longer wanted the four items and then gave them to Plaintiff.

34. On or about May 3, 2019, Fross presented Plaintiff with an unwarranted written reprimand in connection with the above interaction with the customer. He instructed Plaintiff to sign it; however, since Plaintiff disagreed with the reprimand, she did not sign it. Fross told Plaintiff something to the effect of "you don't know what you've just done" and informed her that since she would not sign the document, that the situation would escalate.

35. Plaintiff had never before received a written reprimand, and only later did Fross inform her that signing the reprimand meant only that she acknowledged receipt of the reprimand—not that she agreed with the reprimand.

36. The alleged situation escalated to a review by the individual who oversaw Asset Protection for that district, Shayla Werner, who was familiar with Plaintiff's work history because she had worked with Plaintiff when Werner was an Assistant Manager. A phone call between Werner and Plaintiff, for the purpose of discussing the situation, was scheduled to occur during Plaintiff's work shift. Shortly before the scheduled call, Fross pulled Plaintiff into his office and informed her that there would be no call. He told her that the written reprimand—as well as the prior verbal reprimand he had given her in November 2018—had been dismissed and that they would "start over."

37. During Plaintiff's meeting with Fross, he suggested that she consider returning to her former cashiering position. Plaintiff stated that she believed she was being targeted and that she felt it was an "age thing."

38. On one occasion, a Support Manager told Plaintiff that she believed Fross was "trying to get rid of" her and that Plaintiff was "too good of an employee" such that there was no reason for Fross to do so.

39. Over the next two months, Plaintiff was responsible for preventing multiple incidents of theft at the store.

40. After the November 2018 verbal reprimand and the May 2019 written reprimand were dismissed, each time Plaintiff had discussions with Fross, she asked him if their discussion would result in a negative writing being placed in her personnel file. Each time, Fross would assure Plaintiff that they were "just talking."

41. Also after Plaintiff's previous reprimands were dismissed, Defendant implemented a new color-coded hierarchy for reprimands, with yellow representing the least severe reprimand, orange representing the intermediate level, and red being the most severe level of reprimand.

42. In June 2019, Plaintiff was reprimanded for exiting the store by means of the front door; however, other staff members used the front door.

43. Fross held a staff meeting in which he instructed staff not to use the front door. Following that meeting, Plaintiff became aware of multiple younger co-workers who exited the front door, including one customer service manager who chased a customer out the front door. Despite this, Plaintiff received a red-level reprimand for exiting the store by way of the front door.

44. When Plaintiff discussed the reprimand with a co-worker who had used the front door and had not received any form of discipline for doing so, she remarked that Plaintiff's reprimand was not about the incident itself; rather, it was because Fross was "out to get" Plaintiff.

45. Although the number varied, approximately 5 times per month, a "walkout" would occur at the store, meaning that a customer would ring up items in the self-checkout line but then

walk out of the store without paying for them. Also, at least in Defendant's Pratt store, walkouts occurred more frequently after Defendant eliminated its "Door Greeter" employees in 2019.

46. Several other employees working in Plaintiff's role, primarily younger employees, had experienced walkouts during their shifts. Upon information and belief, these employees were not reprimanded.

47. In July 2019, two walkouts occurred on Plaintiff's shift. Although she was typically able to arrive at the register immediately, Plaintiff arrived within three minutes on each occasion.

48. Afterwards, two customer service managers told Plaintiff that the two walkouts were "no big deal." Upon information and belief, at this time, Plaintiff's co-worker had experienced more walkouts than Plaintiff.

49. On or about August 7, 2019, Plaintiff was summoned to meet with Shay McCoskey, an Assistant Manager. McCoskey told Plaintiff "we're just talking" as she began to read aloud from a letter on an iPad which referenced the above walkouts. Plaintiff asked if the letter—which was not provided to Plaintiff—was going in her personnel file, to which McCoskey responded no, "we're just talking."

50. On or about August 9, 2019, Plaintiff's employment with Defendant was discharged. Plaintiff was escorted into the office, and Hoffman read aloud what appeared to be the same letter that McCoskey had begun reading to Plaintiff two days prior.

51. After Plaintiff's termination, she approached Fross and expressed the fact that a walkout is not a terminable offense. Fross acknowledged that Plaintiff was correct, but that the number of her alleged prior offenses increased the severity level to red.

52. The majority of the employees working in the self-checkout area at the time of Plaintiff's discharge were age 40 or younger.

53. Upon information and belief, the majority of the employees working in the self-checkout area since Plaintiff's discharge have been age 40 or younger.

54. Upon information and belief, since Plaintiff's discharge, at least some of Plaintiff's former job duties have been performed by individuals aged 40 or younger.

55. Upon information and belief, after Plaintiff's discharge, Fross instructed some of her former co-workers not to talk to Plaintiff about Walmart.

56. On one occasion after Plaintiff's discharge, she was approached by a former co-worker, another Self-Checkout Host who is approximately 20 years of age. The young woman commented that she had recently had a walkout worth approximately $100. She was initially concerned about being discharged as Plaintiff had been, however the woman stated that she had discussed the matter with an assistant manager who did not reprimand, discharge, or otherwise discipline her.

57. Over two weeks after Plaintiff's discharge, she received an email from Defendant congratulating her on her 28-year employment anniversary.

## COUNT I – Age Discrimination in Violation of the ADEA

58. Plaintiff hereby restates and incorporates paragraphs 1-57 of this Complaint as though fully set forth herein.

59. At all times relevant to this Complaint, Plaintiff was over the age of 40 and therefore she is an individual protected by the provisions of the ADEA.

60. During her employment with Defendant, Plaintiff's work performance was at least satisfactory.

61. At all relevant times, Plaintiff was subject to discriminatory treatment during the course of her employment by Defendant, including Defendant's agents, on the basis of her age.

8

62. As alleged herein, during her employment with Defendant, Plaintiff suffered adverse employment actions, including disciplinary actions.

63. Defendant discharged Plaintiff's employment with Defendant, and said discharge constitutes an adverse employment action.

64. Defendant discriminated against Plaintiff with respect to the compensation, terms, conditions and privileges of Plaintiff's employment on the basis of Plaintiff's age.

65. Upon information and belief, at all relevant times, the majority of the employees working in Plaintiff's former work area have been age 40 or younger.

66. But for Plaintiff's age, Plaintiff would not have suffered any adverse actions, including discharge, by Defendant.

67. As alleged herein, Defendant's treatment of Plaintiff based on her age provides an inference of age discrimination.

68. Defendant knew or had reason to know of the age discrimination stated herein and failed to take prompt and effective action to remedy the situation.

69. Plaintiff has been damaged by Defendant's illegal conduct in that she has suffered, and will suffer, economic damages, including past and future lost income and fringe benefits.

70. Defendant's conduct as cited herein was willful and, therefore, Plaintiff is entitled to liquidated damages, including, but not limited to, twice the amount of her lost income and fringe benefits, as well as front pay, costs and reasonable attorneys' fees.

WHEREFORE, Plaintiff Jane Walters prays for judgment against Defendant Walmart, Inc. for her economic and liquidated damages in an amount that is fair and reasonable, including, but not limited to, lost income, the value of her fringe benefits, front pay, costs, attorneys' fees, any

and all other relief available pursuant to the ADEA, and any other relief the Court deems just and equitable.

## COUNT II – Retaliation in Violation of the ADEA

71. Plaintiff hereby restates and incorporates paragraphs 1-70 of this Complaint as though fully set forth herein.

72. As alleged herein, Plaintiff engaged in protected activity under the ADEA. Said protected activity included reporting and opposing what she reasonably believed constituted age discrimination under the ADEA.

73. As a consequence of engaging in said protected activity, Plaintiff suffered employment actions which a reasonable employee would consider materially adverse, including those actions alleged herein.

74. The materially adverse employment actions suffered by Plaintiff would dissuade a reasonable employee in Plaintiff's position from engaging in protected activity.

75. As a consequence of engaging in said protected activity, Defendant unlawfully retaliated against Plaintiff, causing Plaintiff to be treated less favorably with regard to the terms and conditions of her employment.

76. A causal connection existed between Plaintiff's engagement in protected activity and the materially adverse employment actions alleged herein.

77. Further, Defendant failed to promptly prevent, properly investigate, and take corrective action to stop the herein cited unlawful conduct from occurring, despite Defendant's receipt of actual and constructive notice of said conduct.

78. Plaintiff has been damaged by Defendant's illegal conduct in that she has suffered, and will suffer, economic damages, including past and future lost income and fringe benefits.

79. Defendant's conduct as cited herein was willful and, therefore, Plaintiff is entitled to liquidated damages, including, but not limited to, twice the amount of her lost income and fringe benefits, as well as front pay, costs and reasonable attorneys' fees.

WHEREFORE, Plaintiff Jane Walters prays for judgment against Defendant Walmart Inc. for her economic and liquidated damages in an amount that is fair and reasonable, including, but not limited to, lost income, fringe benefits, costs, attorneys' fees, any and all other relief available pursuant to the ADEA, and any other relief the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which she has a right to jury trial.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby designates Kansas City, Kansas as the place of trial in this case.

Respectfully submitted,

By: */s/ Michael Stipetich*
Michael Stipetich   Kansas No. 21453
Smith Mohlman Injury Law, LLC
701 E. 63rd Street, 3rd Floor
Kansas City, MO 64110
816.866.7711(office)
816.866.7715(fax)
stip@accidentlawkc.com

ATTORNEYS FOR PLAINTIFF